IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | DEFENDANT'S |
| | ) | SENTENCING MEMORANDUM |
| vs. | ) | |
| | ) | |
| JORDAN MICHAEL JOHN, | ) | Case No.: 3:20-CR-00083 |
| MACHIPINESS-FANDRICK | ) | |
| Defendant. | ) | |

## INTRODUCTION

**COMES NOW THE DEFENDANT,** Mr. Jordan Michael John Machipiness-Fandrick (herein after "Mr. Fandrick"), by and through his attorney, Mr. David D. Dusek (herein after "Mr. Dusek"), does hereby submit the Defendant's position with regards to the sentencing guideline calculation.

## FACTS

On May 21, 2020, a Complaint was filed in the United States District Court, District of North Dakota, charging Mr. Fandrick with Aggravated Sexual Abuse of a Child under the Age of Twelve. On June 10, 2020, an Information was filed charging Mr. Fandrick with one count of Abusive Sexual Contact. On July 1, 2020, Mr. Fandrick appeared at a Change of Plea hearing and pled guilty. A Waiver of Indictment was also filed at that time. On August 26, 2021, Mr. Fandrick will appear before this Court for Sentencing.

## LAW & ARGUMENT

**1.    USSG § 4B1.5(b)(1) enhancement should not apply.**

The Presentence Investigation Report is adding an enhancement under USSG § 4B1.5(b)(1) that should not apply. The Report states that Mr. Fandrick also sexually assaulted three (3) other minor children (S.F. age 4; H.F. age 5; and A.F. age 6). These three (3) children

1

also underwent a forensic interview in which they disclosed that Mr. Fandrick sexually assaulted them. However, the children did not undergo a medical examination as part of the interview process.

A forensic interview is one-half the process when it comes to interviewing children suspected of being sexually abused. The other half is the medical examination. The medical examination is <u>extremely</u> important to determine if the child is telling the truth regarding any alleged abuse. The medical examination can confirm a child's statement, contradict a child's statement, or it can neither confirm nor deny a child's statement. Without a medical examination, the forensic interview is an allegation only.

Everyone wants to believe a child, especially regarding sexual abuse allegations. However, the allegations are not always truthful. For example, I had a defendant who was charged with sexual abuse of a male child in his home. The child told his girlfriend that the man had been abusing him for six (6) years, ever since he was seven (7) years old. The child was going to tell his girlfriend when the abuse happened again. A few days later, the child called his girlfriend and reported to her that he had just been sexually abused again. The girlfriend told her parents about the abuse and the police were called. The defendant was arrested, and the child submitted to a forensic interview. During the forensic interview, the child detailed how the defendant sexually abused him over the years. The child stated he was forcefully sodomized earlier that day and had been sodomized for six (6) years. A medical examination was performed. The medical examination showed that the child did not have any injuries consistent with his forensic interview. The medical examination not only showed that recent sexual penetration did not take place; it also showed no evidence of the child ever being sodomized. The medical report contradicted the forensic interview.

Also, a child may be manipulated into believing something that is not true. You can look no further than the big child day care case in California several years ago where the day care workers were wrongly convicted of sexual abuse that never happened. The children believed it happened, acted like it happened, even needed counseling; but they were never sexually abused. In addition, there are studies that show that young children can be manipulated into believing something that didn't happen. For example: Children ten (10) and eleven (11) years old were in a classroom. A clown and the principal walked in and spoke with the students. The clown was mean to the students and the principal was nice to them. After the clown and principal left, the kids talked about how mean the clown was to them and how nice the principal was to them. The teacher started talking about how nice the clown was and how mean the principal was to them. Later, the children were asked who was mean to them and who was nice. Every one of the kids said the clown was nice and the principal was mean. This was in direct contradiction of what they saw!

In this case, there were only forensic interviews done of the children. No medical examinations were done. If the forensic interviews were to be believed, there would have been medical evidence to support their allegations. Medical evidence could confirm or contradict the allegations made by the children. The Government cannot do one-half of the process, they <u>must</u> complete the entire process.

Forensic interviews alone are not enough. The medical examination is essential to determine the truth and validity of any sexual allegation. Children can be easily manipulated. This court cannot just rely on the testimony of the children and must not enhance the sentence based upon allegations alone.

**2.      Variance request**

The Court should consider the Federal Sentencing Guidelines on an advisory basis. The United States Supreme Court has determined that the mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment to the United States Constitution; and rather, the Court should consider the guidelines on an advisory basis. United States v. Booker, 125 S. Ct. 738, 775-57 (2005). As a result, sentencing courts should calculate and consider the applicable guideline range as one factor, of many, in determining the appropriate sentence. Id.

The Supreme Court has also examined the process the District Court should use during sentencing. United States v. Rita, 127 S. Ct. 2456 (2007). The Court noted:

> The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, . . . perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal resumption that the Guidelines sentence should apply.

Id. (internal citations omitted).

This Court should determine any warranted departure from the guidelines in order to establish a sentence that is "sufficient, but not greater than necessary, to comply with the purpose [of sentencing]." Id. The District Court does not need to apply a presumption of reasonableness to the listed guideline amount, but instead "must . . . consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id. at 272-73 (Justice Stevens concurring) (quoting Koon v. United States, 518 U.S. 81, 113 (1996). Further, the District Court has "limited authority to impose a sentence below a statutory minimum," upon motion of the government, "so

as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). The Court has the ability to consider the individual circumstances of the defendant and their cooperation during the investigation in order to depart from the recommended minimum sentence.

In the proposed plea agreement, the Government has maintained that they will recommend a sentence at the high end of the applicable guideline range. According to the plea agreement, the guideline provisions indicate a final offense level of 33. The Government may also argue USSG §4B1.5(b)(1) five level enhancement as part of the plea agreement. The plea agreement called for an offense level of 31 (not taken into account USSG § 4B1.5(b)(1)). The federal sentencing manual recommends a sentencing guideline range of 108-135 months.

The Pre-Sentence Investigation (herein after "PSI") looked at Mr. Fandrick's criminal history and established a criminal history category of I. The PSI also determined the applicable offense level to be 38. As a result, the federal sentencing manual recommends a sentencing guideline range of 235-293 months. Therefore, the defense requests this Court to impose a sentence below the guideline range and in accordance with the plea agreement.

The Court will impose a sentence that is sufficient, but not greater than necessary, to comply with the purpose set forth in 18 U.S.C. § 3553(a). In determining a proper sentence, the Court must consider the nature and circumstances of the offense and the history and characteristics of Mr. Fandrick. The sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes, and provide Mr. Fandrick with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. Id.

In doing so, the District Court may determine the weight given to the guidelines in any given case. The Court has explained that, "The district court may determine on a case-by-case basis the relative weight to give the Guidelines in light of other 3553(a) factors. In some cases, it may be appropriate to defer to the Guidelines; in others not." United States v. Lazano, 490 F.3d 1317, 1324 (11th Cir. 2007). Specific characteristics of individual defendants, which district courts were once prohibited or discouraged from considering, may now be considered. Rita, at 2473. Matters such as age and education, mental and emotional condition, physical condition and alcohol dependence, family and community ties, and the defendant's acceptance of responsibility and remorse for his actions, are matters that § 3553(a) authorize a sentencing judge to consider. Id. These factors should be considered in the following manner when measuring an appropriate sentence for Mr. Fandrick.

**I.      Age, Education & Employment**

Mr. Fandrick is thirty-one (31) years old and was born on April 19, 1990. He was abandoned by his parents and raised in Dunseith, North Dakota, by foster parents. After graduating high school in 2008, Mr. Fandrick joined the Army in 2009.

While serving his country in Afghanistan, Mr. Fandrick was involved in an explosion. An RPG exploded near him, and he sustained injuries from the explosion. After experiencing traumatic events while serving in Afghanistan, Mr. Fandrick turned to alcohol to cope with the trauma. Mr. Fandrick would not remember what happened while he was drinking. While in the Army, Mr. Fandrick was referred to Cumberland Hall for treatment. He successfully completed treatment in July of 2011. Mr. Fandrick was honorably discharged from the Army in December of 2011. Mr. Fandrick was diagnosed with PTSD, depression, and anxiety. He suffers flashbacks and nightmares daily.

After discharge, Mr. Fandrick was unable to cope with the things he had seen in battle. While Mr. Fandrick had successfully completed treatment during his time in the Army, after his discharge he did not receive any rehabilitation/counseling for PTSD and head trauma he experienced while serving his country. He continued to drink alcohol to solve his problems and blacked out on occasions.

In December of 2011, after his honorable discharge, Mr. Fandrick returned home where he held numerous seasonal employments. Prior to his arrest, Mr. Fandrick had not worked for some time due to his PTSD, depression, and anxiety. Mr. Fandrick is currently unemployed.

## II.     Family & Community Ties

After his discharge from the Army, Mr. Fandrick returned home where he married Ricqual Machipiness-Fandrick in 2012. Their marriage produced four (4) children. Ricqual had two (2) children from a previous relationship. Mr. Fandrick embraced those children and loved them like they were his own. Mr. Fandrick quit drinking once he got married in 2012 and remained sober until his brother, Gordon, committed suicide in May of 2020. Gordon was also under investigation for sexual abuse of minors (some were the same alleged victims as Mr. Fandrick) when he committed suicide. Mr. Fandrick experienced yet another traumatic event. Mr. Fandrick was the person who found Gordon after the suicide. Unfortunately, Ricqual committed suicide in February of 2021.

Numerous individuals have submitted letters to the court on behalf of Mr. Fandrick encouraging the court to consider the positive impact Mr. Fandrick has had on their lives. A common theme throughout the letters emphasizes Mr. Fandrick's eagerness to help others and his reliability as a friend and parent. The letter from Mr. Gene Delgado recognizes the trauma of being in a war and the effects it has on a person upon their return to society.

### III.     Acceptance of Responsibility & Remorse

Mr. Fandrick has shown serious remorse and has taken responsibility for his actions. He eagerly wishes to complete treatment in order to detest from these negative behavioral patterns in the future. These behaviors stood in stark contrast to Mr. Fandrick's lifelong good character, unaggressive nature, and law-abiding behaviors.

Mr. Fandrick does not remember committing this offense but agrees that something must have happened for him to be charged. Mr. Fandrick understands the need for punishment and acknowledges the necessity for him to become fully rehabilitated. He realizes he may have violated the law and betrayed the trust of many friends and family. Mr. Fandrick is not trying to blame anyone and wishes to take full responsibility for his actions.

Mr. Fandrick has suffered major trauma in his life. He was abandoned as an infant, several close family members have died, and he experienced life-threatening danger while serving his country in Afghanistan. He was diagnosed with PTSD, depression, and anxiety. He has taken prescribed medication in the past to manage his symptoms but is not taking any medication since he has been incarcerated. He has attended therapy sessions but has discontinued his visits. He believed the counselor was studying him rather than trying to help him.

The sentence imposed by this Court must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a). Mr. Fandrick acknowledges the seriousness of this offense and is unwavering in his belief that he deserves to be punished for his actions. However, based upon the sentencing factors enumerated in 18 U.S.C. § 3553(a), it is appropriate for the Court to exercise its discretion and impose a sentence below the suggested guideline range in this case.

To reiterate, Mr. Fandrick has neither made excuses for his conduct nor is he trying to shift the blame to anyone other than himself. He has shown, and will continue to show, extreme remorse and guilt for his conduct. Mr. Fandrick does not remember committing the offense and asserts to this Court that the offense in this matter is completely out of character for him and does not define him as a person. Mr. Fandrick is requesting that this court sentence him to a period of one hundred eight (108) months of incarceration followed by a lifetime term of supervised release. This is the low end of the guidelines pursuant to the plea agreement.

## **CONCLUSION**

For the foregoing reasons, Mr. Fandrick respectfully requests this Court depart from the sentencing guidelines and sentence him in accordance with this memorandum.

Dated this 24th day of August, 2021.

/s/ David D. Dusek
By:  David D. Dusek
ND License No.:  05070
FOR:  DUSEK LAW, P.C.
Post Office Box 14145
Grand Forks, ND 58208-4145
Telephone: (701) 746-4107
Facsimile: (218) 793-0013
Email: david@duseklaw.com
Service Address: duseklaw@duseklaw.com
**ATTORNEY FOR THE DEFENDANT**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing **Defendant's Sentencing Memorandum** was filed on the 24th day of August, 2021. I electronically filed with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing to the following:

ATTORNEY FOR THE UNITED STATES

Ms. Dawn M. Deitz  
U.S. ATTORNEY'S OFFICE  
655 1 AVE N STE 250  
FARGO, ND 58102  
701-297-7400  
E-mail: dawn.deitz@usdoj.gov  
LEAD ATTORNEY  
ATTORNEY TO BE NOTICED  
Designation: USA

                                                /s/ David D. Dusek  
                                                David D. Dusek